this morning. The first is Rose. Nursing, let me just see if counsel are here. Mr. Zelmanovitz, are you here? Yes, your honor. Good morning. You can see us and hear us okay? Yes, very well. Thank you, your honor. All right. And Mr. Howell, are you also here? Yes, your honor. Thank you. Good. All right. And I can see you and hear you. So all right. This will run pretty much like it does when we're in the courtroom. That's the miracle of Zoom. There's always the potential for a glitch. So if that happens, if you get disconnected for whatever reason, try to get back on. We'll wait a reasonable period of time. If for some reason you just disappear for more than a few minutes, we're likely to suspend the argument and then pick up perhaps with the interim. We'll then resume after the conclusion of the next argument. That's happened only once, I think, in the last three weeks or four weeks. But it is a possibility. So don't panic. We've got great IT people who are on board and here to help. And last week, this went off very smoothly. So all right. Mr. Zelmanovitz, you reserved two minutes for rebuttal. Yes, your honor. On 10 minutes total. So you've got eight minutes now. You may proceed. Thank you, your honor. If it pleases the court, Joseph Zelmanovitz of Stolon Zelmanovitz, co-counsel for the appellants. Members of the court, the issue and the key issue in this entire case is whether liquidated damages clause in an employment agreement of an employee who is a foreign employee is enforceable or not. We respectfully submit, and I'll go into that in a minute, that the district court respectively decided that the clause was unenforceable, but applied the wrong legal analysis in doing so. The plaintiff here signed her employment agreement willingly and did so so as to have entree to the United States and the employment markets there. No one coerced her into doing so. She knew about the liquidated damages clause. There was nothing hidden about the clause. There's no deceit. There's no fraud. None is alleged with respect to that. The plaintiff knew, the employee knew that she was beholden to this provision and because of the expenses and future expenses that would be incurred in connection with the employment of a foreign person and applying for a visa for that purpose, there would be damages which were not ascertainable and cannot be ascertained with reasonable certainty at the time of the contracting. That is the key. We respectfully submit that what the district court did was to look at what the actual damages were with respect to the expenses incurred in connection with the actual employment of the employee at the time. That was a look back to say, well, here are the expenses and therefore it was disproportionate to what the liquidated damages provision of $25,000 were. Mr. Zamanowicz, I appreciate the point that you're making but of course what the actual damages will be is in a sense always not ascertainable at the outset of the formation of the contract. The question is whether you know at the beginning of the contract whether the damages will be calculable at the appropriate time. In other words, it's clear that no one knows at the beginning how much in the way of legal fees may be accumulated while trying to shepherd this visa through but one knows at the beginning that that's the kind of expense you're going to have and one knows that the lawyer's bills will be there at the end so that you will be able to ascertain the damages. Am I making a mistake here in the way I'm thinking about this? There are two aspects of the estimate of damages at the time of contracting that could not be determined at the point of time when the this court's decision in the leasing court case was. We are talking about the cost of a replacement of a nurse in a nursing home and as we all know just from past experience or current experience with respect to the pandemic that cost could skyrocket and it has skyrocketed because of the pandemic. Now that is not to say that every single situation should take in mind and take into account. It was not possible at the time of contracting to determine what that replacement cost was and in the record we have the affidavit of one of the defendants of principle who said in his affidavit what the actual overhead recruitment cost was per employee which was $26,000. That is not the expert's testimony which I could comment on. That was the actual affidavit and based on knowledge of one of the principles. Can I ask you counsel was there any contrary evidence from the plaintiff about what those expenses were? My understanding was it's the challenger's burden to show that the amount is ascertainable or isn't rather and I just I wasn't sure whether there was any evidence in the record about sort of the flip side of that. There is absolutely no evidence in the record as to the flip side and that is another aspect of the error that we respectfully suggest the district court made which is to shift the burden upon the appellants, the employer to determine what those costs were and to make its case to say that oh they could not have been determined at that point. There was no contrary evidence. The only was about approximately $40 or $42 per hour instead of the $29 or $30 per hour that the employee was getting an astronomical increase. At the time of contracting, everyone knew that in a nursing home if an employee is going to leave suddenly, a nurse is going to leave, you can't leave patients abandoned. You have to get someone in there immediately. The contract doesn't say anything about replacement costs, right? No, it does not. In fact, it was contemplated or it could have been contemplated that replacement was going to be necessary in the event of a breach, right? Well, that's exactly why there was a liquidated damages clause because all the expenses, for example, the overhead for recruiting, the expenses in replacement, all those things were recruiting, right? The contract is recruiting. It references immigration costs. It references orienting the employee, but it doesn't say anything about replacement costs. Why not? Because it was impossible to know at the time what the replacement cost was. But the fact of replacement costs was knowable, right? Well, that's why the contract says that generally the costs were unknown. When the contract speaks about the specific recruitment cost, those were known at the time, which is why they had the employee sign off on that. That was known and it was $3,000, I think, that the contract said. Of course, the actual bills that came in at that time were known. What was going to be in the future when and if this employee breached the contract and left right in the middle, abandoning her job and breached the contract, that was totally unknown. Yes, but you see what you're saying strikes me again as the same in any contract. If you have a contract that someone's going to supply you with widgets, as many as you need at a certain fixed price, and then they breach the contract, the cost of cover is always not knowable at the beginning. There could be market spikes and market drops and all kinds of things could happen between now and whenever the breach occurs. But when the breach occurs, it's no big deal to figure out what it is. It is what it is. In this case, it was $40 an hour, at least for a while. It's not clear how long that is or why that matters. But you know what the cost was of replacement, and you know in advance that you will know what the cost of replacement is, whatever it happens to be. The damages will be calculable. Well, respectfully, you do not know what the cost of the replacement would be. You do know that there will be a replacement factor, just as you know that there will be a cover. Now, the difference is when the time comes and there is a breach, yes, you can determine what those damages are. But that does not and never makes a liquidated damages clause that was entered into unenforceable because the critical period of time to look at that is when the contract is entered into. And at the time the contract is entered into, and all the cases say that, don't look later, look then when the contract is entered into. Was there a certainty as to what those costs were? No. If there was no certainty, then the liquidated damages clause should estimate what you believe, and a reasonable estimate would be what the costs were. Now, in point of fact, based on what the facts are, it was underestimated because of the situation that arose, because of market conditions, $42 a replacement cost for a nurse was a lot more than was even contemplated. But that was to the benefit of the employee. And because they could not fix with any certainty the amount of money that the breach would cause as a loss, that's why you fix it with a reasonable measure of $25,000, not a million dollars, not $500,000, but $25,000. Because that was what the principles and that's what all the parties believe would be appropriate amount that would take care of the loss. Can I just ask you, if you set aside replacement costs, there's about $4,500, I think, of quantifiable costs. Is there anything else that's missing from that? Is recruitment included in that $4,500? No, recruitment is not because the actual cost of a person signing a piece of paper and somebody billing for that, yes, but the overhead of maintaining a recruitment office for all employees, which is what was the situation here, turned out to be $26,000 per employee. So you got overhead, is that it? Overhead and replacement costs, yes. And those take much in excess of the $25,000. And neither of those are specified in the contract. Well, they couldn't be. They couldn't be because no one knew what they were at the time. No, they're not. I think what Judge Park is asking is the contract lists the kinds of damages that the liquidated damages will be in lieu of, but it does not list as a category recruitment overhead or cost of replacement. I think that's the question. Is that correct? If that is the question, the answer is that the contract does not list all the categories of damages. All the contract lists is now we know what the actual travel cost is, maybe a hotel or things of that nature that could be determined at that time, and they wanted the employee to sign off on that. However, because you cannot figure out with respect to a breach, and it was foreseeable on everybody's part that if an employee in a nursing home leaves, it must be replaced. The employee must be replaced. There is a cost. There is a cost for the overall recruiting program. This was a program to recruit foreign employees. All of that could not be determined, and none of that has to be specified in the contract. The contract itself does not specify each and every item of damages that would be compensable. It does not do so. It just wants to list what we know now. Then, because we don't know what's going to be in the future, we have to have a reasonable estimate of what those damages are. That is a very quick question we've done way over, but the recruitment costs, the record reflects that it wasn't Golden Gate that paid the recruitment costs. It was Prompt Nursing, but the signatories to the contract are Golden Gate and the plaintiffs, right? The contract allows for the assignment of all the obligations under the contract, which is why they took over all the obligations of paying the nurses. As a consequence of that, they also took over all the benefits of the contract. It was an assignment to Prompt. If the court allows me to, I'd like to go into the next issue, which is the TVPA. We're way over, and we're five minutes over, and you've reserved two minutes for rebuttal. I'll give you 30 seconds, but I think we have to move on. Well, just in 30 seconds, I will just say, Your Honor, that no court has ever held that an unenforceable liquidated damages provision gives rise to liability under the TVPA. Isn't the question you really ought to be spending your time on, if you want us to address that issue, our appellate jurisdiction over those issues? Yes, Your Honor. I will just say that with respect to appellate jurisdiction, the entire basis for the TVPA was the liquidated damages clause. No, no, no. It's a two-way street here. If you had appellate jurisdiction over this issue, it would be necessary to decide the validity of the liquidated damages clause in order to decide that issue, but it doesn't run the other way. Once we've decided, if we decide in your favor, for example, that the liquidated damages is invalid, then the district court can apply that to whatever other issues are relevant, but we don't need to decide anything about trafficking in order to address the issue over which we have appellate jurisdiction. We don't need to talk about trafficking at all. We just talk about liquidated damages. Then we're done. So I don't see why it's inevitably necessary in order to decide what we have to decide to talk about trafficking. Well, the only reason I would suggest respectfully is that there's only one issue with respect to the TVPA, and that is the liquidated damages provision. There is no other one. And why can't we trust the district court to sort that out when it goes back on remand? In other words, there's no need for us to address trafficking in order to resolve the interlocutory appeal that is before us. Is that right? I mean, you talked about the whole issue before and never mentioned trafficking once as something that was relevant to the issue over which we have appellate jurisdiction. I would agree with that, Your Honor. Okay. We'll now hear from Mr. Howley, who's got 10 minutes. May it please the court, John Howley for Plaintiff Appellee Rose Pugwaregan. Could you say that name again for me? Yes, Your Honor. Pugwaregan. Pugwaregan. Okay. Thank you. The contract at issue here states on its face that the $25,000 termination fee is designed, quote, to secure employees' performance of the employment term, close quote. And we submit that the district court's decision was correct because all of the evidence is consistent with that stated purpose. And because the $25,000 does not reflect a reasonable estimate of potential damages that was made at the time of contracting. At the time of contracting, the appellants put in their contract a description of what would be included in the liquidated damages. And they identified costs for recruiting the employee, costs for sponsoring the employee for a visa, and costs for training and orientation of the employee. And those costs were known at the time, at the time of contracting. And they were about $4,000. So those costs do not justify a $25,000 liquidated damages clause. Now, as for replacement costs, replacement costs are not mentioned as a basis for the liquidated damages clause in the contract. And equally important, maybe more important, Ben Philipson, one of the owners of the nursing home, did not mention replacement costs when he testified about the basis for the liquidated damages. He testified that the liquidated damages clause of $25,000 was an estimate of the cost of $247,000. So Mr. Philipson's testimony is consistent with the language of the contract. And under New York law, a liquidated damages clause must be based on a reasonable estimate that's made at the time of contracting. This means that the court should only consider the costs that were actually contemplated and actually estimated at the time of contracting. You can't come back later and say, well, now we're going to estimate what we would have estimated, but we didn't estimate at the time. And we cite the Agerbrink case in our brief, 196 F sub 3rd 412 out of the Southern District of New York in 2016, which goes through New York case law on this point. And those cases hold that a liquidated damages clause cannot be defended when there was no attempt to estimate the amount of potential damages at the time of contracting. And in this case, there is no evidence that the nursing home estimated or even contemplated replacement costs at the time of contracting. Now the appellants also argued that there are other recruiting costs involved here that do not show up in the declaration or acknowledgement of costs that they prepared at the time of contracting. It's very important, however, to sign the contract, which was a nursing home had no recruiting costs other than possibly part of the $4,000. And that can be found in his testimony in the appendix at page 1,646. Now prompt nursing may have had recruiting costs. We don't know. They may have had recruiting costs, but prompt was the assignee of the contract. And as the assignee prompt only has the rights of the assignore and the assignore had no recruiting costs. In addition to the defendants, I'm sorry, the appellants have been recruiting nurses from the Philippines for more than a recruiting cost at the time of contracting, but they didn't do so. And for those reasons, we believe the district court's decision on the liquidated damages clause should be affirmed. And as for all of the other issues that the appellants wish to raise, there's no need for this court to decide any of those issues, which are admittedly interlocutory issues, not independently subject to appeal in order to decide the one issue that is subject to an interlocutory appeal, which is the liquidated damages clause. And I would submit to this court that it should allow the district court to address those other issues based on the decision of this court. And unless there are any questions, I will rest on my brief for the remaining arguments. All right. Thank you, Mr. Howell. We'll now hear again from Mr. Zalmanovitz for two minutes of rebuttal. Thank you, Your Honor. There is no law that requires one to list the specific items of damages with respect to a breach of contract. And this is a matter of contract law. The remedy with respect to liquidated damages takes one step from the regular contract law. Under contract law, damages are recoverable if they are foreseeable. The contract never has to specify what is meant by foreseeable. That is just a matter of, number one, common sense, and number two, the circumstances and the facts of the particular situation. We're not talking about lost profits. We're talking about what is directly foreseeable to a breach. What was directly foreseeable with respect to a breach are the replacement. Is there anything in the record? I think we may have lost Judge Sullivan again. I'm back. Can you hear me? Yes. Son of a gun. We could hear. Well, we heard for a second. I was getting to the good part. Your Honor, okay. Can you hear me? Yes, we can. Yeah, I don't know what happened here. I'm here at the courthouse. I would have thought that I'd have the most secure line and the shortest distance, but who knows? So, I could hear you, Mr. Lozanovitz, and I was actually trying to get a question in, but I noticed since you weren't stopping, the problem must be me. So, I guess the question I had, is there anything in the record to suggest that the plaintiff was aware of these replacement costs as a potential avenue for liquidated damages? The plaintiff was a nurse in a nursing home who has a responsibility by law to take care of patients. That employee knows that if she leaves suddenly, as she did, someone else has to take care of the patients. They can't be left in a vacuum, and the Department of Health regulations require that there be a replacement immediately. That nurse has to be aware of that. That's just part of the law, as any registered nurse would know if they want to practice in New York State. So, to say that this nurse could not contemplate that if she left or he left, that there would be no replacement cost whatsoever, is just not a matter of reality. In this industry, and in the health industry in general, and as we've all experienced, it is a matter of fact that there has to be a replacement nurse, and there is a cost involved. Mr. Zalmanovitz, Mr. Howley began by noting that the contract says on its face that the purpose of this clause is to compel or incentivize the employee to continue working through the course of the contract, and I think his point was that that, in effect, is itself illegitimate. That is, in contract law, we assume there's such a thing as a potential efficient breach, and that sometimes it's better for one party to breach the contract and pay damages, actual damages, and it's better for everyone all around. The party suffering the breach gets damages, the party breaching betters her circumstances, and everyone comes out okay, but a penalty provision that is designed to compel performance disrupts that process. Do you have a response to his point on that? I do, your honor. In fact, the same case that he cites, AIDS Remodel Services LLC, is the one that recites the general law, including law from the Second Circuit and I believe the Southern District, that it is not material how the party is referred to the provision. It is not material whether they call it a penalty, whether they call it punitive damages. It doesn't matter. What matters is the substance. Are the damages that are liquidated proportionally related to what the actual damages could be? Is an estimate reasonable? That's all that is required under the law, and all of those cases say that. All right. We'll leave it there. Thank you both. Very well argued. We will reserve decision, and now we'll move on to the next argument on the calendar. Thank you, your honor. Thank you. Let me just tell Mr. White that I'm still getting a little bit of choppiness, and I lost the video at one point. I never lost the audio, so if I get cut off again, maybe I'll just come in through my uh you'll see that because it's RJ's iPad. Thank you, your honor. Okay, no problem. All right.